JAMES B. CORYELL, TRUSTEE, ETC., RESPONDENT, v. BUFFALO UNION FURNACE COMPANY, APPELLANT.

Argued June 30, 1915—Decided November 15, 1915.

Dimmick & Co. entered into a contract to deliver coke to defendant in monthly quantities, payments to be made therefor on the twenty-fifth of the succeeding month. Owing to difficulties in the mining district the plaintiff was unable to supply the quantities of coal contracted for, and defendant went into the market and purchased the difference on the plaintiff's account. Plaintiff demanded payment for the coal supplied and defendant refused to pay until after the termination of the contract. Plaintiff then rescinded and sued for the coal delivered. The trial court found that under the law of Pennsylvania, which was *lex loci contractus*, the plaintiff had a right to rescind, and gave judgment for the value of the coke delivered. *Held*, that the finding of the trial court, sitting without a jury, was a finding of fact, and as such is not reviewable in this court.

---

On appeal from the Supreme Court.

For the respondent, *Grey & Archer* and *Alexander Simpson, Jr.*

For the appellant, *W. Holt Apgar* and *Edward J. Garono* (of the New York bar), and *George B. Gordon* (of the Pennsylvania bar).

The opinion of the court was delivered by

MINTURN, J.    J. K. Dimmick & Co. entered into a contract with defendant to sell, and under which defendant was to purchase the requirements of two blast furnaces of defendant, estimated to be about one hundred and twenty thousand tons of coke during the period beginning July 1st, 1912, and expiring December 31st, of that year, at the net price of $2.10 per net ton of two thousand pounds, f. o. b., cars oven Connellsville region in the State of Pennsylvania.

Payments were to be made on or before the twenty-fifth day of each month for all shipments made during the preceding month.    The shipments were to be made in equal monthly quantities of about twenty thousand tons each.    These provisions supply the salient features of the contract for the determination of the question presented by the case.

Subsequent to the execution of the contract Dimmick & Co. became bankrupts, and the plaintiff was appointed their trustee.    The requirements of the blast furnaces was approximately seventeen thousand seven hundred and forty tons per month.    Dimmick & Co. furnished during July seventeen thousand fifty-three tons and were paid on the 25th of August as required by the terms of the contract.    In August they furnished twelve thousand nine hundred five and three-tenths tons for which they were not paid.    In September two thousand seven hundred thirty-seven and eight-tenths tons were delivered for which no payment was made.    During this period a combination of the dealers in the coke trade in the Connellsville region prevented a literal and practical compliance with the terms of the contract.    The defendant in order to fulfill its business requirements, after many efforts to induce Dimmick & Co. to increase the quantity of their shipments,

went into the open market and purchased coke at a rate thirty to fifty cents per ton higher than the contract rate, and notified Dimmick & Co. that such purchases were being made on their account. On September 25th the amount due to the shipper under the terms of the contract was approximately $20,100.50 for coke actually delivered.

In this situation a demand for payment was made by plaintiff, and about September 27th, the defendant, through its president, notified plaintiff that no remittance would be made for coke delivered unless there were moneys left over or due to plaintiff after the 1st of January. This ultimatum resulted in the rescission of the contract by the plaintiff by notice to that effect, and thereafter this suit was brought. The case was tried before the court, without a jury, by consent of the parties, and the court found for the plaintiff for the amount of its claim, with an alternative finding, which in view of the result we have reached must be regarded as surplusage.

No question is made as to the *quantum* of the judgment, and the correctness of the court's conclusion, in that respect, but the legal inquiry which questions the propriety of any judgment for the plaintiff is presented as the sole ground of appeal.

The determination of the trial court is predicated upon the legal correctness of plaintiff's contention that the refusal of the defendant to pay for the coke delivered as required by the terms of the contract was such a material violation of the contract as to indicate that the defendant no longer intended to live up to its terms, and warranted the plaintiff in treating it as at an end.

It will be observed that while the plaintiff did not live up to the terms of the contract, by supplying the quantity of coke agreed upon, by force of which failure the defendant was obliged to resort to the open market for its supply, the defendant nevertheless treated the contract with Dimmick & Co. as subsisting, and made no effort to rescind it, but undertook to put a construction upon it as to payments, which was at variance with the express convention of the parties.

The plaintiff's demand for payment for coke delivered was made in accordance with the terms of the contract. When the defendant refused to live up to this feature of the contract, it was the plaintiff's right, at his option, at common law, to resort to rescission. *Doughtin* v. *Camden Building and Loan Association,* 41 *N. J. Eq.* 559; 9 *Cyc.* 649, and cases cited.

The trial of the case turned upon the question whether this common law rule was also *lex loci contractus,* the contract having been executed in the State of Pennsylvania.

The trial court after hearing testimony of opinion witnesses from that state, found as a fact that the common law rule of rescission was also the law of Pennsylvania, and that under it the plaintiff was warranted in rescinding the contract, and bringing his suit for the value of the coke delivered.

We are now asked, and this contention presents the only ground of appeal, to review such finding as presenting a question of law. That it was a question of fact for a jury to determine is the settled law of this state. *Title Guarantee, &c., Co.* v. *Trenton, &c.,* 56 *N. J. Eq.* 441; 16 *Cyc.* 888 and cases cited.

That this court will not review a finding of fact with substantial evidence to support it, is equally well settled. *Hoffmeir* v. *Frost,* 86 *N. J. L.* 682; *Mupo* v. *Crew Levick Co.,* 85 *Id.* 377.

The case of *Dimmick* v. *Metropolitan Life Insurance Co.,* 69 *N. J. L.* 384, referred to by the appellant as authority for its contention to the contrary, will not bear such construction.

In that case no attempt was made in the trial court to show what was the law of the foreign jurisdiction; and this court found it necessary to determine the question for itself by an examination of the printed reports of the foreign state in conformity with the provisions of the Evidence act (*Comp. Stat.,* p. 2229), which provides that the reported judicial decisions of other states may be judicially noticed as evidence of the common law of such states.

That formality is not necessary to the disposition of the case *sub judice,* since the determination of the question by the trial court removes the contention as one of fact from the sphere of controversy here.

The judgment under review will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 14.

*For reversal*—BLACK, J. 1.